# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOQDAN RYABYSHCHUK, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>CITIBANK (SOUTH DAKOTA) N.A., also known as City Cards,<br><br>            Defendant. | CASE NO. 11-cv-1236 – IEG (WVG)<br><br>ORDER DENYING MOTION TO DISMISS [Doc. No. 14]. |

This is a purported class action brought by Plaintiff Boqdan Ryabyshchuk alleging that Defendant Citibank, N.A. sent text messages to his cellular phone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Subject matter jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Currently before the Court is Citibank's motion to dismiss for failure to state a claim. [Doc. No. 14.] Ryabyshchuk filed an opposition to the motion, and Citibank replied. [Doc. Nos. 15, 16.] The Court took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** Citibank's motion to dismiss.

## BACKGROUND

Ryabyshchuk alleges that on May 16, 2011, he contacted Citibank by telephone and inquired about the possibility of Citibank providing him a line of personal credit in the form of a credit card. (First Amended Complaint ¶ 9.) Later that day, Ryabyshchuk alleges he received the following "unsolicited" text message from Citibank on his cellular phone:

> Free Text Msg: Citi Cards needs to talk with you regarding your recent application. Please call 866-365-8962.  To Opt-Out reply STOP.

(*Id.* ¶ 10.)  In response, Ryabyshchuk replied "STOP" by sending a text message.  (*Id.* ¶ 11.)  Thereafter, Ryabyshchuk alleges he received the following "unsolicited" text message:

> Free Text Msg: Per your request you will no longer receive text alerts from Citi Cards Credit Dept.  If you have any questions call 866-365-8962.

(*Id.* ¶ 16.)  Ryabyshchuk alleges that both text messages he received were placed via an "automatic telephone dialing system" and without any consent by him.  (*Id.* ¶¶ 11, 15, 17, 22.)

Ryabyshchuk filed his complaint on June 6, 2011, and filed his First Amended Complaint ("FAC") on August 25, 2011.  [Doc. Nos. 1, 10.]  He alleges two causes of action: (1) negligent violations of the TCPA; and (2) knowing or willful violations of the TCPA.  He seeks statutory damages in the amount of $500 per violation on the first cause of action and treble damages on the second cause of action.  He also seeks injunctive relief prohibiting future similar conduct.

Ryabyshchuk also brings this action on behalf of the following class: "all persons within the United States who received any unsolicited confirmatory text messages, including any unsolicited confirmatory/marketing text messages from Citibank after any class member sent a reply text message, 'STOP,' to Citibank in response to a text message sent by Citibank, which text message by Citibank or its agents was not made for emergency purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint."  (FAC ¶ 25.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (internal citation omitted).  "Dismissal can be based on the lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court, however, need not accept "legal conclusions" as true. *Iqbal*, 129 S. Ct. at 1949. Thus, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. It is also improper for the court to assume that plaintiff "can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

**DISCUSSION**

Ryabyshchuk brings his claims under Section 227(b)(1)(A)(iii) of the TCPA, which provides in pertinent part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The Ninth Circuit has held that "a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Furthermore, the TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." 47 U.S.C. § 227(a)(1). "[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield*, 569 F.3d at 951.

The only issue before the Court at this time is whether the challenged text messages were sent without Ryabyshchuk's "prior express consent."[1] "Express consent is 'consent that is clearly

---

[1] Citibank notes that it does not concede that it contacted Ryabyshchuk using an ATDS. However, Citibank does not base its motion to dismiss on this ground.

and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004)) (plaintiff's consent to receiving promotional material from Nextones or their affiliates and brands did not amount to express consent to receiving a text message from the defendant company, which was not owned or controlled by Nextones nor was its subsidiary). Here, Ryabyshchuk's FAC alleges that the first message he received from Citibank was "unsolicited" and was sent to his cellular phone without prior express consent. (FAC ¶¶ 10-11, 15.) Similarly, Ryabyshchuk alleges that the second message from Citibank was also "unsolicited" and was sent to his cellular phone without prior express consent. (*Id.* ¶¶ 16-18, 22.) Moreover, Ryabyshchuk alleges that whatever consent might have existed initially, he effectively revoked it by replying "STOP" to Citibank's first message. (*Id.* ¶¶ 12, 15.) Accepting these facts as true, the FAC "state[s] a claim to relief that is plausible on its face'" because it plausibly alleges that the two text messages from Citibank were received without Ryabyshchuk's prior express consent. *See Iqbal*, 129 S. Ct. at 1949 (citation omitted); *see also Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *3 (N.D. Cal. Mar. 16, 2010) (concluding that plaintiff's allegations "that he received at least two unsolicited text messages from defendants within the twelve month period prior to September 29, 2009 . . . support[ed] a plausible inference that defendants violated a regulation prescribed under section 227(c) of the TCPA" (internal citation omitted)).

Citibank's arguments to the contrary are not persuasive. First, Citibank argues that one allegation in Ryabyshchuk's original complaint defeats his claim. Specifically, in his original complaint, Ryabyshchuk alleged as follows:

> Plaintiff applied for a credit card through Defendant on or before May 16, 2011. In that application, Plaintiff provided his cell phone number.

(Complaint ¶ 9 [Doc. No. 1].) In his amended complaint, however, Ryabyshchuk alleged:

> Plaintiff, on or before May 16, 2011, contacted Citibank, by telephone, and inquired about the possibility of Citibank providing him a line of personal credit in the form of a credit card.

(FAC ¶ 9.) Thus, at first blush, the FAC appears to be inconsistent with the original complaint because it omits any indication that Plaintiff provided his cell phone number in his application. However, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs.,*

1 *Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). As the Ninth Circuit explained:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

*Id.* at 858-59. At this early stage of the proceedings, the Court is ill-suited to determine which allegations that were omitted from, or added to, the FAC are meritorious and which one are unfounded. *See id.* at 858 ("But the Federal Rules of Civil Procedure do not authorize a district court to adjudicate claims on the merits at this early stage in the proceedings; the court may only review claims for legal sufficiency. Adjudication on the merits must await summary judgment or trial."). Moreover, the "allegations in the two versions of the complaint might not conflict at all." *See id.* Rather, at this time, the role of the Court is to examine the amended complaint to see whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

The cases relied upon by Citibank do not warrant a different conclusion. At most, they stand for the proposition that the Court can utilize allegations in prior versions of the complaint *to judge the plausibility* of the allegations in the amended complaint. *See, e.g.*, *Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS KJN, 2011 WL 2119128, at *5 (E.D. Cal. May 25, 2011) ("Thus, plaintiffs may alter their allegations in an amended complaint, but the court may properly consider the plausibility of the FAC in light of the prior allegations."); *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*[,] 129 S. Ct. at 1950."). At this early stage of the proceedings, the Court is not prepared to say that the allegations in Ryabyshchuk's FAC are not plausible based on a single

sentence in the original complaint that might turn out to not be contradictory at all.[2]

Second, Citibank's reliance on several of Federal Communications Commission ("FCC")'s rulings is misplaced. For example, in its 1992 Report and Order, the FCC emphasized that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928 (Oct. 16, 1992). As already indicated, however, it is still unclear whether Ryabyshchuk released his phone number "knowingly" and, even if he did, what limitations might have attached to that release. *See Satterfield*, 569 F.3d at 955 ("Express consent is 'consent that is clearly and unmistakably stated.'" (citation omitted)).

Similarly, in its 2008 Declaratory Ruling, the FCC clarified that "calls to wireless numbers provided by the called party *in connection with an existing debt* are made with the 'prior express consent' of the called party." *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564, 2008 WL 65485 (Jan. 4, 2008) [hereinafter, "FCC Rul. 07-232"] (emphasis added). Thus, "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number *regarding the debt*." *Id.* (emphasis added). In this case, because there is no indication that Ryabyshchuk provided his number, or that Citibank was trying to reach him, regarding some existing debt, there is no inference of prior express consent. *See id.* at 564-65 ("We emphasize that prior express consent is deemed to be granted only if the wireless

---

[2] Citibank also argues that the Court "may, in fact, strike the changed allegations as false and sham." *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144-45 (N.D. Cal. 2010) (quoting *Azadpour v. Sun Microsys., Inc.*, No. 06-3272, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007)) (internal quotation marks omitted); *Jones v. Bayer Healthcare LLC*, No. 08-2219 SC, 2009 WL 1186891, at *3 (N.D. Cal. May 4, 2009) (quoting *Azadpour*, 2007 WL 2141079, at *2 n.2). However, both *Stearns* and *Jones*—the two cases that Citibank cites for this proposition—relied on the district court's decision in *Azadpour*, which has been effectively overruled by the Ninth Circuit in *PAE*. *Compare Azadpour*, 2007 WL 2141079, at *2 n.2 ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'" (citations omitted)), *with PAE*, 514 F.3d at 860 ("The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. . . . Unless there is a showing that the party acted in bad faith . . . inconsistent allegations are simply not a basis for striking the pleading."). Accordingly, the Court is not persuaded by those cases.

1  number was provided by the consumer to the creditor, and that such number was provided during
2  the transaction that resulted in the debt owed.").

3  Finally, and most crucially, the FCC recognized the heavy burden a consumer might face
4  in trying to prove that he *did not* provide prior express consent. Thus, "to ensure that creditors and
5  debt collectors call only those consumers who have consented to receive autodialed and
6  prerecorded message calls," the FCC concluded that "the creditor should be responsible for
7  demonstrating that the consumer provided prior express consent." *Id.* at 565. "The creditors are in
8  the best position to have records kept in the usual course of business showing such consent, such
9  as purchase agreements, sales slips, and credit applications." *Id.*; *see also Gutierrez v. Barclays*
10 *Group*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011) (placing the
11 burden on the creditor to establish prior express consent); *Hicks v. Client Servs., Inc.*, No. 07-
12 61822-CIV, 2009 WL 2365637, at *5 (S.D. Fla. June 9, 2009) ("The burden of establishing prior
13 express consent is on the Defendant." (citing FCC Rul. 07-232)). Accordingly, a motion for
14 summary judgment—rather than a motion to dismiss—is the proper place for the creditor to
15 establish that the consumer's claim fails due to the presence of prior express consent.[3]

### CONCLUSION

17 For the foregoing reasons, Citibank's motion to dismiss is **DENIED**.

18 **IT IS SO ORDERED.**
19 **Date: November 28, 2011**

20 **IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[3] As such, the cases relied upon by Citibank are inapposite because in each one of them the issue of prior express consent was determined at the summary judgment stage. *See, e.g.*, *Gutierrez*, 2011 WL 579238; *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010); *Starkey v. Firstsource Advantage, LLC*, No. 07-CV-662A(Sr), 2010 WL 2541756 (W.D.N.Y. Mar. 11, 2010). Indeed, in *Gutierrez*, this court specifically noted that the burden was on the creditor to demonstrate that the consumer provided prior express consent. 2011 WL 579238, at *2. In that case, the court found that the creditor met its burden by providing "a copy of the on-line application form, which lists both cellular numbers" to which the allegedly unsolicited text messages were sent. *Id.* at **2-3.

Moreover, unlike the present case, each of the above cases dealt with phone calls relating to an existing debt. *See, e.g.*, *id.* at *1; *Cunningham*, 2010 WL 3791104, at **4-5; *Starkey*, 2010 WL 2541756, at *4. As the FCC explained, calls made "in connection with an existing debt" are made with the "prior express consent" of the called party. FCC Rul. 07-232, 23 FCC Rcd. at 564.