Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770
(619) 297-1022

**[Other Attorneys of Record Listed on Signature Page]**

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bogdan Ryabyshchuk, Individually and on Behalf of All Others Similarly Situated individually and on behalf of others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>Citibank (South Dakota) N.A., a/k/a Citi Cards<br><br>Citibank. | **Case No: 11-CV-01236-IEG-WVG**<br><br>**Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion For Summary Judgment**<br><br>**Date: 8/13/12**<br>**Time: 10:30 AM**<br><br>**Judge: Hon. Irma E. Gonzalez**<br><br>**U.S. Federal Building Courthouse**<br>**Southern District of California**<br>**Courtroom #1**<br>**940 Front Street**<br>**San Diego, California** |

**I.     Evidentiary objections.**

Throughout Defendant's opposition, Defendant looks to self-serving statements by Defendant's employees, through deposition or declaration, that merely state what Defendant would have the court believe its website states. These comments are hearsay, in violation of Fed. R. Evid. 802. Further, these statements violate Fed. R. Evid. 1002 (Best Evidence Rule). The best evidence of the contents of a document, here a website, is the document itself; a person's testimony about the contents of a document violates Fed. R. Evid. 1002 and is inadmissible; see *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1065 (C.D. Cal. 2006) (sustaining best evidence objection on summary judgment where party was using testimony to prove the contents of documents).

**II.    Argument**

The Supreme Court of the United States recently noted that the reason Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C.S. § 227, is because consumers are "outraged" over the proliferation of these intrusive, nuisance calls, and that Congress has found these calls to be an invasion of privacy.

> In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." [Citation]. In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." Ibid. (internal quotation marks omitted).

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (U.S. 2012). Consumers are now beginning to push back on these invasions of privacy, with these marketing companies expressing outrage that their spamming efforts can be curtailed.

   **A.     Defendant hopes to cloud the issues by arguing irrelevant factual and legal issues, and through blatantly deceptive half-truths.**

      **1.     Plaintiff's supposed "express consent" is irrelevant**

Defendant repeatedly states that the plaintiff gave prior express consent to receive the spam messages sent by the defendant. This is a half-truth apparently designed to create

confusion. To begin with, plaintiff disagrees that he ever gave prior express consent to have these messages sent to him. However, even if such were the case, the plaintiff clearly withdrew any such consent prior to the last message being sent to him. Even the defendant does not deny this. Furthermore, a more detailed look at the supposed "consent" that the defendant relies on demonstrates that even the initial messages were never consented to as the "Pop-Up Box" that the defendant relies so heavily upon was, by its very terms, was to "service the account." Here, it is undisputed that the plaintiff never had an account with the defendant. Consequently, even if such a dialog box were presented to Plaintiff, he could not have consented to what took place here.

As tempting as Plaintiff finds it to chase that particular issue, Plaintiff will refrain from doing so in anything other than the most superficial and explanatory way. It is the second message that Plaintiff is focused on for this class action. There the issues are simpler; the facts clearer; and liability more definite. With regard to the Class, this issue is about as clear and concise as one could imagine.

**2. Plaintiff's confusion about which telephone number was given to Defendant is not an issue here**

Here defendant goes on and on about how, according to defendant, the plaintiff gave defendants "express consent" to receive the first text message, (by merely giving his telephone number) and how the plaintiff now claims otherwise. Plaintiff disagrees with this argument for a number of reasons; it is neither accurate nor, importantly here, relevant.

Further, the Ninth Circuit has also cautioned against taking the position Defendant now invites the court to take. In *Nelson v. City of Davis*, 571 F.3d 924 (9th Cir. Cal. 2009), the court stated that, "In [*Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262 (9th Cir. 1991)], we noted that other circuits had "urged caution in applying the rule" and concluded "that the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier testimony." *Id.* at 266-67. Accordingly, *Kennedy* required that "before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* at 267.

1       From a factual standpoint, Defendant states that, "based on his own testimony, and Citibank's records for the application, plaintiff clearly provided his cell number to Citibank with the application." *Defendant's Motion, page 3, lns 25-26*.  Defendant then objects to the later conflicting statement made by Plaintiff regarding this issue.

Plaintiff never denied he gave a telephone number to Defendant.  The issue that is unclear to Plaintiff is what number was provided.  During his deposition, Plaintiff's answers were not the "clear" picture Defendant hopes to paint, but more "murky."  Importantly here, once discovery was conducted it was discovered that Defendant had somehow obtained *two* of Plaintiff's numbers, even though Plaintiff believed he had previously supplied only one.  How Defendant obtained this second number has not been explained by Defendant and is unknown by Plaintiff.  Once this was discovered, Plaintiff had doubts about his certainty on this issue, and questioned exactly which number was actually supplied by him.  At deposition, Plaintiff made the assumption that only one number was at issue.

But again, all of this is irrelevant.  Whether Plaintiff gave, or did not give, Defendant his cell telephone number means nothing to Plaintiff's case or any defense available to Defendant; it is all a red herring.  Plaintiff is not trying to "create an issue of fact," as Defendant claims.  The issue means nothing to Plaintiff.

From a legal standpoint, the court has already ruled on this issue of "express consent" in a previous motion, when Defendants attempted to have the case dismissed under rule 12(b)(6). See, *Docket 18*.

> Similarly, in its 2008 Declaratory Ruling, the FCC clarified that "calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564, 2008 WL 65485 (Jan. 4, 2008) [hereinafter, "FCC Rul. 07-232"] (emphasis added). Thus, "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id. (emphasis added). **In this case, because there is no indication that Ryabyshchuk provided his number, or that Citibank was trying to**

**reach him, regarding some existing debt, there is no inference of prior express consent.** See id. at 564-65 ("We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.").

*Ryabyshchuk v. Citibank (South Dakota) N.A.*, 2011 U.S. Dist. LEXIS 136506, 13-14 (S.D. Cal. Nov. 28, 2011) (Boldface added for emphasis.)

It is still undisputed that there is not *an existing debt* in this case, and consequently, even if Plaintiff had given Defendant his cellular number during the application process, something Plaintiff now doubts, it would be meaningless here.

It is improper for the defendant to attempt to take another bite of this apple and hope for a conflicting ruling from the court. This has been resolved. There is *still* "no inference of prior express consent" in this case. *Id*.

But most significant of all, this issue simply does not matter. It is irrelevant to the case before the court. Plaintiff's case is the *last call*, not the first call.

3.   **Defendant's "Pop-Up" box is also irrelevant**

Defendant argues that the original online application provided for consent from applicants. To support this, Defendant discusses what it calls a "Consent Message," in the form of a "Pop-Up Box."

Any consent alleged by the defendant due to this "Pop-Up Box" was, by its very terms, to "service the account." However, it is undisputed that Plaintiff never got to the point where he even had an account with Citibank, and as Defendant acknowledges it its motion, Plaintiff ultimately declined to open an account because he felt his privacy was being imposed upon. Therefore, there was nothing for Defendant to "service." These messages were marketing messages - SPAM.

Finally, even if this language had somehow included Plaintiff, any consent given was later expressly revoked, prior to the last message. Again, Plaintiff's case is the *last call*, not the first call. Consequently, this "Consent Message" argument from Defendant has no relevance here.

### 4. Plaintiff's argument regarding "trapping" of Plaintiff's telephone number is, again, irrelevant

Again, Plaintiff does not know for certain how Defendant got his cellular telephone numbers but now believes this was through "trapping," as there can be no other explanation. Trapping occurs when a company records the telephone number for later use from a telephone's caller ID information. However, this is, again, irrelevant to Plaintiff's motion for summary judgment. Plaintiff is not suing Defendant for trapping his number, but only believes the evidence suggests Defendant did "trap" number.

### 5. Defendant's messages are SPAM

Defendant states that the final SPAM sent to Plaintiff "simply followed up on plaintiffs request for [a] credit card." *Defendant's Motion, page 13, ln 9*. As noted above, the content of the message is irrelevant. *Melingonis v. Network Communs. Int'l Corp.*, 2010 U.S. Dist. LEXIS 125348, 3-4 (S.D. Cal. Nov. 29, 2010) (The content of messages under the TCPA have no relevancy.) The mere fact that Defendant sent the message after being expressly told to STOP creates a violation. However, the message solicits Plaintiff to call 866-365-8962 in the future, and this soft-peddling of the message as "follow up" is meant to disguise what was said; "If you have any questions call 866-365-8962" Defendant was still hoping to persuade Plaintiff to call. The text message was SPAM.

### B. Defendant's "conversation" theory is equally meritless.

Defendant argues that a single "call" under the TCPA can be a series of text messages. To support this rather imaginative idea, Defendant looks to *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. Cal. 2009), taking, *out of context*, a phrase from within a sentence in *Satterfield* defining a call; "to communicate with or try to get into communication with a person by a telephone." *Defendant's Motion, page 13, lns 3-4*. However, what *Satterfield* also says in this regard, is this:

> The district court did not address Simon & Schuster's argument that sending a text message does not fall within the Act, because a text message is not a "call" within the meaning of the TCPA. Reviewing this issue, **we hold that a text message is a "call" within the meaning of the TCPA**.

HYDE & SWIGART
San Diego, California

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-952 (9th Cir. Cal. 2009) (Bold face added.) This could not be more clear. A text message is a call within the meaning of the TCPA.

This is consistent with the TCPA's plain language that states, it is a violation of the TCPA to make *"any call"* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. Cal. 2009).

And this is exactly what this court previously stated in the case here:

Section 227(b)(1)(A)(iii) of the TCPA, provides in pertinent part:

> It shall be unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service ….

*Ryabyshchuk at* 5-6, citing 47 U.S.C. § 227(b)(1)(A)(iii).

> The Ninth Circuit has held that "a text message is a 'call' within the meaning of the TCPA." *Ryabyshchuk* citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). "Furthermore, the TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." 47 U.S.C. § 227(a)(1). *Id.* "[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield*, 569 F.3d at 951.

*Id*.

Furthermore, the relevant portion of the TCPA provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
> . . .
>
> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1) (2006). (Emphasis added.)

And indeed, any finding to the contrary would lead to absurd results, something that is proscribed. *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. Cal. 2005), citing *Lamie v. United States Tr.*, 540 U.S. 526 (U.S. 2004) ("When the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.")

If the court were to accept Defendant's argument, a consumer could never put a stop to Defendant's abusive SPAM messages if the first SPAM received fell under some lawfully provided purpose. According to Defendant's argument, when a consumer attempts to put an end to such SPAM, that request can be ignored as subsequent SPAM is merely an extension of the previous lawful text message. Defendant argues that ALL messages are merely extensions of the first message; all messages are one call, an absurd result.

**C.    Defendant's reliance on Ibey v. Taco Bell Corp. is equally fruitless.**

Defendant wants this court to interpret what Congress "really meant" (according to the defendant) as opposed to what Congress actually said (according to Congress). And, of course, to Defendant, what Congress "meant" was "not the defendant's messages." To meet that desire, Defendant provides argument about the TCPA's history.

But what the defendant provides is improper. "Courts can only insert language into a statute if the result of the statute's plain meaning is absurd." *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. Cal. 2005), citing *Lamie v. United States Tr.*, 540 U.S. 526, 537-538 (U.S. 2004). "[I]nquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield*, 569 F.3d at 951. And in *Satterfield* the Ninth Circuit found that in drafting the TCPA, Congress mean what it said and said what it meant. As the the *Satterfield* court stated, "[W]e conclude that the statutory text is clear and unambiguous."

> In construing the provisions of a statute, we first look to the language of the statute to determine whether it has a plain meaning. *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008). "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in

a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) (internal quotation marks omitted)). Reviewing this statute, **we conclude that the statutory text is clear and unambiguous**.

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. Cal. 2009) (Emphasis added). The TCPA does not need Defendant's spin, and it would be inappropriate for the court to accept it.

Defendant looks to the recent decision in *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030 (S.D. Cal. June 18, 2012). (Defendant fails to mention that the *Ibey* decision is currently under appeal before the United States Court of Appeal for the Ninth Circuit.) In *Ibey*, the court *did* consider defendant's spin, and then *interpreted* the TCPA to include only marketing messages. But *Ibey* is non-binding, under appeal, and simply not consistent with the well established rules of statutory construction. *Ibey* also ignores case law from the Ninth Circuit and the Southern District of California. *Ibey* is contrary to the plain reading of the TCPA and is clear error, which is why it is currently under appeal, and the court should not find *Ibey* persuasive.

In *Ibey,* the court held that because the message at issue was "confirmatory" in it's content, the the TCPA does not apply. "Confirmatory" means the court looked to the content of the message. The *Ibey* court never explained what a "confirmatory message" is, but did exlude such calls by embracing the idea that the TCPA regulates only "unsolicited telemarketing," and not single messages designed to "confirm." *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030 (S.D. Cal. June 18, 2012) (Defendant's single, confirmatory text message did not constitute unsolicited telemarketing.) *Ibey* ignored the plain language of the TCPA, the interpretation of the FCC in in *In re the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R 559, 565 (Jan. 4, 2008), and the very clear (and court emphasized) language in *Melingonis v. Network Communs. Int'l Corp.*, 2010 U.S. Dist. LEXIS 125348, 3-4 (S.D. Cal. Nov. 29, 2010), and held instead that, "To impose liability under the TCPA for a single, confirmatory text message would contravene public policy and the spirit of the statute—prevention of unsolicited telemarketing in a bulk format. Accordingly, the Court grants Defendant's motion to dismiss…." *Ibey v. Taco Bell Corp.*, at *8.

1       But the TCPA is far more broad than what the *Ibey* found. The plain language does not constrict the TCPA to the "unsolicited telemarketing" that *Ibey* found. And in *Melingonis*, the court noted that "the TCPA is intentionally broad," and stated, "**We note that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'**" (Bold face is that of the court's.) *Melingonis v. Network Communs. Int'l Corp.*, 2010 U.S. Dist. LEXIS 125348, 3-4 (S.D. Cal. Nov. 29, 2010), citing the FCC's position in *In re the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R 559, 565 (Jan. 4, 2008).

        *Ibey's* reading is simply contrary to plain reading of the TCPA, and the reading that the FCC has found. It is contrary to the Ninth Circuit's holding in *Satterfield* where the court held that a single message constituted a violation of the TCPA. And it is contrary to *Melingonis*, where the Southern District of California held that the content of a message or call is irrelevant. The TCPA simply does not provide for interpretations of the messages being transmitted by Defendant's equipment, and it applies to "all calls," "regardless of the content of the call."

        The TCPA is strict liability. Numerous courts have determined that the TCPA does not require intent, except when awarding treble damages. *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. Fla. 2008), citing *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 (8th Cir. Mo. 2005) ("[I]ntent is not a prerequisite to liability under the [TCPA].") and *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004) ("The TCPA is essentially a strict liability statute.")

        The court in *Ibey* also appeared to object to the fact that the case involved only *a single text message* to a consumer. However, the plain language of the "The TCPA makes it unlawful 'to make **any call**' using an ATDS." *Satterfield*, 569 F.3d at 952 (Emphasis added). It does not require a *series of calls*; it mere requires "any call." See also, *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744 (W.D. Tex. 2011). (Emphasizing that the FCC applies "regardless" of the content of the calls, and that it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. (Italics is that of the court)).

This conforms with other federal and FCC opinions, for example, *Resource Bankshares Corp., v. St. Paul Mercury Ins. Co.*, 407 F. 3d 631, 642 (4th Cir. 2005) ("[T]he TCPA's unsolicited fax prohibition protects "seclusion" privacy, for which content is irrelevant."); See also, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, Declaratory Ruling*, 23 FCC Rcd 559 (2008), p. 11 (the prohibition against the use of automatic telephone dialing systems to make calls to cellular telephones "applies regardless of the content of the call") and *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744 (W.D. Tex. 2011) (same). In summary, it is not the content of the communication, but rather the sending of the communication itself that the TCPA seeks to regulate. Consequently, a holding that the TCPA does not apply to a "single, confirmatory text message" unrelated to marketing is clearly erroneous.

## IV.   Conclusion

There is no reason for someone to send the SPAM that defendant here transmits to cellular telephone users other then a desperate attempt to convince the consumer to respond to the defendant and hopefully agree to purchase defendant's services. These messages cost consumers millions of dollars while costing the defendant very little.[1]  These messages make these companies that transmit these messages a great deal of money, at the expense of consumers. This, no doubt, motivates persons like the defendant here to try to get that one last message across to the consumers. And this appears to be only the beginning.

The defendant is in the business of transmitting this type of marketing. It should come as no surprise when the law expects a company like the defendant to be familiar with, and follow, the laws that regulate its business, including the TCPA. When, as here, such a business crosses over the line, it is not also not unreasonable to expect that business to bear the burden of such ill-considered behavior. All persons like defendants have to do is stop sending these types of messages, but of course, they do not want to do that. There is no reason, other than marketing, for them to continue to engage in this activity.

---

[1] Even in situations where the marketing company arranges to have its messages sent freely, the responses required by consumers still cost consumers money.

Respectfully Submitted:

**Hyde & Swigart**

Date: September 12, 2012          By: /s/ Joshua B. Swigart
                                  Joshua B. Swigart
                                  Attorneys for Plaintiffs

**Other Attorneys of Record, besides caption page:**

Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
S. Mohammad Kazerouni, Esq. (SBN: 252835)
mike@kazlg.com
**Kazerouni Law Group, APC**
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Douglas J. Campion
**Law Offices of Douglas J. Campion**
409 Camino Del Rio South, Ste. 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034