# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOQDAN RYABYSHCHUCK, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIBANK (SOUTH DAKOTA) N.A., also known as City Cards,<br><br>Defendant. | CASE NO. 11-CV-1236 - IEG (WVG)<br><br>**ORDER:**<br><br>1. **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br>[Doc. No. 32]<br><br>2. **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**<br>[Doc. No. 36]<br><br>3. **DENYING DEFENDANT'S MOTION TO STRIKE.**<br>[Doc. No. 40] |

Before the Court are the parties' cross motions for summary judgment on the dispositive issue of whether certain text messages are actionable under the Telephone Consumer Protection Act (the "TCPA"), and Defendant Citibank (South Dakota), N.A., ("Citibank")'s motion to strike Plaintiff Boqdan Ryabyshchuk's declaration in support thereof. For the reasons below, the Court hereby **DENIES** Plaintiff's motion for summary judgment, [Doc. No. 32], **GRANTS** Defendant's motion for summary judgment, [Doc. No. 36], and **DENIES** Defendant's motion to strike, [Doc. No. 40].

///

**BACKGROUND**

This case concerns confirmatory text messages that were sent to cellular phone numbers voluntarily submitted to Citibank via online credit card applications. Plaintiff, individually and on behalf of those similarly situated, claims such text messages violate provisions of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and seeks statutory damages of $500 per negligent violation and up to $1500 per knowing or willful violation.

**I.   Undisputed Facts**

On May 14, 2011, Plaintiff provided his cellular phone number to Citibank in an online credit card application. [Doc. No. 42 at 3-4.] When the number was entered, a pop-up message displayed: "By providing . . . your mobile number, you agree to receive calls and messages, such as text messages . . . to service your account." [*See* Doc. No. 36 at 3.]

On May 16, 2012, Citibank, via third-party vendor using short message service ("SMS code"), sent the following text message (the "first text") to the cellular phone number Plaintiff had provided:

> Free Text Msg.: Citi Cards needs to talk with you regarding your recent application. Please call 866 365-8962. To Opt-Out reply STOP.

[Doc. No. 42 at 3-4 (omitted punctuation in original text).] That same day, after Plaintiff replied "STOP," Citibank sent the following text message (the "second text") to Plaintiff's cellular phone number:

> Free Text Msg: Per your request you will no longer receive text messages from Citi Cards Credit Dept. If you have any questions call 866-365-8962.

[*Id.*]

**II.   Procedural History**

Plaintiff filed an initial complaint on June 6, 2011, [Doc. No. 1], and the operative first amended complaint ("FAC") on August 25, 2011. [Doc. Nos. 10.] The Court denied Defendant's motion to dismiss the FAC on November 28, 2011. [Doc. No. 18.] Discovery closed on June 27, 2012. [*See* Doc. No. 31.] Plaintiff and Defendant filed their present motions for summary judgment on July 5 and 27, 2012, respectively, [*see* Doc. Nos. 32, 36], and the Court heard oral argument by the parties on September 21, 2012, [*see* Doc. No. 47].

Though the FAC alleges that both the first and second texts constitute negligent and/or

1  knowing or willful violations of the TCPA, [*see* Doc. No. 10 at 4-5], Plaintiff's summary judgment
2  briefing abandons the first text as basis for his claims. [*See, e.g.*, Doc. No. 42 Pltf's Reply at 2 ("It
3  is the second message that Plaintiff is focused on for this class action."), at 4 ("Plaintiff's case is
4  the *last call*, not the first call.").]  Moreover, at the hearing, the parties asserted that the present
5  summary judgment motions solely concern Defendant's liability for the second text, sent after
6  Plaintiff replied "STOP."  [Doc. No. 47.]

## DISCUSSION

### I.  Motions for Summary Judgment

"Summary judgment is appropriate when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009) (citing Fed. R. Civ. P. 56).  Here, the only issue presented is whether, on the undisputed facts as a matter of law, the second text is actionable under the TCPA.

The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice—
> ...
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

This statutory language has been interpreted to generally "make it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call."  *Mims v. Arrow Financial Services, LLC*, _ U.S. _, 132 S.Ct. 740, 745 (2012); *Satterfield*, 569 F.3d at 955 ("TCPA exempts those calls 'made with the prior express consent of the called party.'") (quoting 47 U.S.C.

1  § 227(b)(1)(A)).[1]

2  In construing the extent and contour of this general prohibition, courts consistently and properly look to the purpose and history of the statute. *See Mims*, _ U.S. _, 132 S.Ct. at 744 ("In enacting the TCPA, Congress . . ."); *Satterfield*, 569 F.3d at 954 ("the purpose and history of the TCPA indicate . . ."). Hence, as is widely-acknowledged, "the purpose and history of the TCPA indicate that Congress was trying to prohibit use of ATDSs in a manner that would be an invasion of privacy." *Satterfield*, 569 F.3d at 954. So, too, courts broadly recognize that not every text message or call constitutes an actionable offense; rather, the TCPA targets and seeks to prevent "the proliferation of intrusive, nuisance calls." *See, e.g.*, *Mims*, _ U.S. _, 132 S.Ct. at 744. With the statute's purpose in view, the Ninth Circuit recently emphasized that courts look to the surrounding circumstances in determining whether particular calls "run afoul of the TCPA," and in so doing, courts must "approach the problem with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, __F.3d__, 2012 WL 4902839, at *3 (9th Cir. Oct. 17, 2012); *see also Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992) ("Common sense not dogma is what is needed in order to explore the actual meaning of legislative enactments.").

Here, common sense renders the second text inactionable under the TCPA. *See Henrique v. U.S. Marshal*, 653 F.2d 1317, 1320 (9th Cir. 1981) ("the Court must recognize the common sense practicalities of the situation presented."). The lone text message at issue was sent to a number voluntarily provided by Plaintiff to Defendant without caveat. [Doc. No. 42 at 3-4.] In the span of a day, Plaintiff received a separate, indisputably inactionable text message (the first text), responded with a one-word, opt-out request, and received a concise response simply confirming receipt of the opt-out request (the second text). [*Id*.] These circumstances "unmistakably" display some measure of prior consent, *cf. Satterfield*, 569 F.3d at 955, and dispel any allusion to "the proliferation of intrusive, nuisance calls" targeted by the TCPA. *See Mims*, _ U.S. _, 132 S.Ct. at 744. Such simple, confirmatory response to plaintiff-initiated contact can hardly be termed an invasion of plaintiff's privacy under the TCPA. *Id*. A finding to the contrary would "stretch an inflexible interpretation beyond the realm of reason." *See Henrique*, 653 F.2d at

---

[1] A "text message is a 'call' within the TCPA." *Satterfield*, 569 F.3d at 954.

- 4 -    11cv1236

1320.

The Honorable Marilyn L. Huff recently reached this same common sense interpretation in *Ibey v. Taco Bell Corp.* 2012 WL 2401972, at *2-3 (S.D. Cal. June 18, 2012). Just as in this case, the text message at issue in *Ibey* was sent in response to plaintiff's opt-out request, to a number voluntarily provided by plaintiff, and merely confirmed receipt of plaintiff's opt-out request. *See id.* Judge Huff surveyed the legislative history of the TCPA and concluded that:

> sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA. To impose liability under the TCPA for a single, confirmatory text message would contravene public policy and the spirit of the statute.

2012 WL 2401972, at *3.

In arguing that *Ibey* was wrongly decided, Plaintiff relies on opinions finding the TCPA content neutral. [*See e.g.*, Doc. No. 38 at 22 n.32 (citing *Melingonis v. Network Communs. Int'l Corp.*, 2010 WL 4918979, at *1 (S.D. Cal. Nov. 29, 2010) ("We note that [the TCPA] applies regardless of the content of the call . . .")).]. But the rationale underlying *Ibey* concerns context rather than content, and context is indisputably relevant to determining whether a particular call is actionable under the TCPA. *Chesbro*, __F.3d__, 2012 WL 4902839, at *3. The plain language of the statute exempts certain calls in certain contexts. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (exempting calls sent during an emergency or with prior consent). Moreover, the statute contemplates further contextual exemptions as delineated by the Federal Communications Commission ("FCC"). *See, e.g.*, *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564, 2008 WL 65485 (Jan. 4, 2008) (FCC's 2008 Declaratory Ruling exempting "calls to wireless numbers provided by the called party *in connection with an existing debt*."). In *Ibey*, Judge Huff considered circumstances nearly identical to those presented here and reasoned that "[t]o impose liability under the TCPA for a single, confirmatory text message would contravene public policy and the spirit of the statute." 2012 WL 2401972, at *3.

This Court agrees; imposition of liability under the TCPA for a single, confirmatory text message would constitute an impermissibly "absurd and unforeseen result." *Henrique*, 653 F.2d at 1320 (when interpreting the scope of a statute, "the Court must . . . refuse to be compelled into an

absurd and unforeseen result."). In line with the TCPA's limited purpose, the Ninth Circuit's recent emphasis on common sense practicality, and given the particular circumstances of this case, the Court finds the second text inactionable as a matter of law and therefore **GRANTS** Defendant's motion for summary judgment.

**II.     Defendant's Motion to Strike**

Defendant's motion to strike raises evidentiary objections inconsequential in light of the Court's finding above and is thus **DENIED** as moot.

## CONCLUSION

For the reasons above, the Court hereby **DENIES** Plaintiff's motion for summary judgment, [Doc. No. 32], **GRANTS** Defendant's motion for summary judgment, [Doc. No. 36], and **DENIES** Defendant's motion to strike, [Doc. No. 40].

**IT IS SO ORDERED.**

**DATED:**     October 30, 2012

**IRMA E. GONZALEZ**
**United States District Judge**